1

2

3

4

5

6

7

8       # UNITED STATES DISTRICT COURT

9       ## EASTERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| ANTHONY RAY JONES, | ) | 1:09-cv-1504 SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

18

19                          **BACKGROUND**

20          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the

21   "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB")

22   and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act.

23   42 U.S.C. §§ 405(g), 1383(c)(3).   The matter is currently before the Court on the parties' briefs,

24   which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States

25   Magistrate Judge.[1]

26   _____

27          [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 9, 10.)  On April 7,
     2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes.  *See* 28 U.S.C. § 636(c); Fed. R. Civ.
28   P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1955, has an eleventh-grade education, and previously worked as a production helper.  (Administrative Record ("AR") 20, 27.)  On June 17, 2005, Plaintiff filed applications for DIB and SSI, alleging disability beginning on May 28, 2005, due to a work injury that occurred on May 17, 1999, causing him to stop working in 2000.[2]  (AR 12, 17.)

On February 27, 2002, an MRI of Plaintiff's lumbar spine showed some mild disc desiccation at L5/S1 and a small disc protrusion with no nerve root compression.  (AR 214.)

On October 4, 2005, Plaintiff complained of low back pain and reported that he was unable to participate in activities of daily living, sat around all day, and was depressed.  (AR 235.)  On May 25, 2006, Plaintiff reported that he could walk about a half mile to shop for groceries and could perform limited housework.  (AR 223.)

On June 27, 2006, Plaintiff's treating physician, Jeff Jones, M.D., opined that Plaintiff's medications, including Lexapro, MS Contin, Hydrocodone, and Ibuprofen, "provided [Plaintiff] with a significant subjective decrease in his pain and also an increase in his function as manifested by the ability to sit, stand, and walk."  (AR 219.)  Dr. Jones did "not feel that any of the medications [Plaintiff] takes are preventing him from returning to the work force and I am encouraging him to do that."  (AR 219.)

On December 7, 2006, Ethelynda Jaojoco, M.D., conducted a consultative orthopedic examination of Plaintiff.  (AR 259-63.)  Dr. Jaojoco noted that Plaintiff "worked as a production worker for Granny Goose and last worked in 2000.  The company eventually closed."  (AR 260.)  Dr. Jaojoco's functional assessment of Plaintiff was as follows:

> [Plaintiff] is able to stand and/or walk for six hours and sit for six hours.
>
> He does not require any assistive devices.

---

[2] The Commissioner denied Plaintiff's previous applications alleging disability arising from the same work injury in administrative decisions dated May 3, 2002, and May 27, 2005.  (AR 17, 47-55.)

2

He is able to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. The lifting and carrying restrictions are secondary to the lumbar degenerative disk disease and the presumed degenerative disk disease of the cervical spine.

He has postural limitations of frequent bending, stooping, and crouching with no crawling.

He has no manipulative or environmental restrictions.

(AR 262-63.)

On August 13, 2007, T. P. Nguyen, M.D., a state agency physician, assessed Plaintiff's physical residual functional capacity ("RFC"). (AR 279-83.) Dr. Nguyen opined that Plaintiff could (1) occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper and lower extremities. (AR 280.) Plaintiff could occasionally climb ramps and stairs (but never ladders, ropes, or scaffolds), balance, stoop, kneel, crouch, and crawl. (AR 281.) Plaintiff had no manipulative, visual, communicative, or environmental limitations. (AR 281-82.)

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 59-60, 64-65, 69-73, 77-83.)

On July 11, 2008, ALJ Howard K. Treblin held a hearing where Plaintiff testified that he last worked in 2000 as a production worker. (AR 16, 28.) The ALJ noted in his decision Plaintiff's testimony as follows:

[Plaintiff] testified that he is unable to work because of a work related back injury, involving his back, neck, and both legs and feet. He testified he has tingling in both arms extending to his fingertips. He has high blood pressure and has developed depression. [Plaintiff's] current medical treatment consists solely of medications. His medications relieve pain somewhat, but make him sleepy. [Plaintiff] described his pain level of 5/10, and he spends half his day lying down or sitting because of pain. He is able to sit comfortably about an hour, can stand for 15 minutes, and walk about 30 minutes. He has difficulty using his hands, but his doctor has not provided any diagnosis or explanation as to the cause of his symptoms. Doing activities such as shopping or doing housework increases his pain. Because of depression, he has difficulty maintaining concentration and memory, and does not get along with people. [Plaintiff] testified that he has been diagnosed with bilateral neurogenic foot

3

pain.  It has existed since 2004.  When severe, he lies down for 3-4 hours during the day.

(AR 16.)

On November 4, 2008, Dale Van Kirk, M.D., performed a consultative orthopedic examination, which included a physical examination and a review of Plaintiff's medical records. (AR 356-60.)  Dr. Van Kirk noted that Plaintiff had "been out of work since 2000 when his job closed."  (AR 357.)   Dr. Van Kirk diagnosed Plaintiff as suffering from low back pain with radiculopathy. (AR 359.) Dr. Van Kirk also opined that Plaintiff could be expected (1) in an eight-hour workday to stand and/or walk for six hours and sit for six hours and (2) to lift and carry ten pounds frequently and 20 pounds occasionally.  (AR 359.)

On that same day, Dr. Van Kirk also completed a medical source statement regarding the doctor's opinion about Plaintiff's physical ability to do work-related activities.  (AR 349-55.)  Dr. Van Kirk opined that Plaintiff could continuously reach, handle, finger, feel, push, and pull, as well as operate foot controls with both feet. (AR 351.)  Plaintiff could also occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; he could never climb ladders or scaffolds.  (AR 352.) Vibration and extreme cold and heat would likely increase Plaintiff's chronic low back pain. (AR 353.)

Finally, Dr. Van Kirk opined that Plaintiff could (1) perform activities like shopping; (2) travel without a companion for assistance; (3) ambulate without using a wheelchair, walker, or two canes; (4) walk a block at a reasonable pace on rough or uneven surfaces; (5) use standard public transportation; (6) climb a few steps at a reasonable pace with the use of a single hand rail; (7) prepare a simple meal and feed himself; (8) care for personal hygiene; and (9) sort, handle, and use files.  (AR 354.)

On January 26, 2009, the ALJ issued a decision finding Plaintiff not disabled since May 28, 2005.  (AR 9-21.)  Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of May 28, 2005; (2) has an impairment or a combination

of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform his past relevant work; and (5) could perform other jobs that exist in significant numbers in the national economy. (AR 15-21.) The ALJ found that Plaintiff had the RFC to bend, stoop, crouch, crawl, and lift and/or carry 20 pounds occasionally and to lift and/or carry ten pounds frequently. (AR 16.)

The ALJ further found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (AR 17.) The ALJ found Plaintiff's statement that he quit work because of medical problems inconsistent with the medical record indicating that his company had been closed. (AR 17.) In further discounting Plaintiff's testimony, the ALJ also noted:

> In a medical record dated October 4, 2005, [Plaintiff] stated that because of pain in his back, left leg and foot, he sits most of the day, and feels depressed. However, on May 25, 2006, he reported to his treating doctor that he could walk one-half mile to do grocery shopping, but did have limitations in doing housework.

(AR 18 (internal citation omitted).) Moreover, the ALJ found that there was no medical evidence that Plaintiff's impairments had significantly worsened or that he was more limited than as of the date of the earlier administrative decision in 2005. (AR 19.)

Plaintiff sought review of this decision before the Appeals Council. On June 23, 2009, the Appeals Council denied review. (AR 1-4.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

On August 21, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony.

1

## SCOPE OF REVIEW

2      The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

3  by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

4  1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

5  of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must

6  determine whether the Commissioner applied the proper legal standards and whether substantial

7  evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d

8  909, 911 (9th Cir. 2007).

9      "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*

10 *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such

11 relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

12 *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

13 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the

14 evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

15 not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

16 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

17

## APPLICABLE LAW

18      An individual is considered disabled for purposes of disability benefits if he is unable to

19 engage in any substantial, gainful activity by reason of any medically determinable physical or

20 mental impairment that can be expected to result in death or that has lasted, or can be expected to

21 last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

22 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or

23 impairments must result from anatomical, physiological, or psychological abnormalities that are

24 demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

25 such severity that the claimant is not only unable to do his previous work, but cannot, considering

26

27

28                                                        6

1  his age, education, and work experience, engage in any other kind of substantial, gainful work that

2  exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

3      The regulations provide that the ALJ must undertake a specific five-step sequential analysis

4  in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the

5  claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).

6  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

7  or a combination of impairments significantly limiting her from performing basic work activities.

8  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the

9  claimant has a severe impairment or combination of impairments that meets or equals the

10 requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.*

11 §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant

12 has sufficient RFC[3] despite the impairment or various limitations to perform her past work.  *Id.*

13 §§ 404.1520(f), 416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that

14 the claimant can perform other work that exists in significant numbers in the national economy.  *Id.*

15 §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the

16 sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99

17 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

18                              **DISCUSSION**

19 **A.   Plaintiff's Credibility**

20      The ALJ found that Plaintiff's "medically determinable impairment could reasonably be

21 expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity,

22 persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent

23 _____

24   [3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in
   a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.
25 Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from
   an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's
26 RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and
   'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"
27 *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

28                                    7

with the . . . residual functional capacity assessment." (AR 17.)  Plaintiff contends that the ALJ failed to set forth legally sufficient reasons for rejecting his subjective complaints.  According to the Commissioner, however, the ALJ gave valid reasons for finding Plaintiff not entirely credible.

### 1.    Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection.  *Id.*  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929.  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### 2.    Analysis

In this case, the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to produce the alleged symptoms," that is, Plaintiff presented objective

medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  (AR 17.)  Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing.  As discussed further below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

First, the ALJ found that the objective medical evidence in the record did not fully support Plaintiff's subjective complaints of disabling pain.  Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, it is one factor which may be considered with others.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Here, for example, the ALJ noted that a February 2002 MRI showed no evidence of disc bulge or herniation, but only a small disc protrusion with no nerve root compression (AR 18, 214), which would be inconsistent with a finding of total and permanent disability.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (determining that, in discounting claimant's pain testimony, ALJ appropriately considered objective medical findings, including MRI and X-rays showing only mild degenerative disease and no disc herniation or nerve root impingement); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (MRI revealing very minimal degenerative disc disease, no bulge or protrusion, and no canal stenosis or nerve root impingement is inconsistent with finding total and permanent disability); *cf. Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (claimant's "pain can be directly attributed to an objective finding – a diagnosis of persistent nerve root irritation and more recently, to a recurrent herniated disc").

Further, the ALJ found that no treating or examining physician recommended functional limitations supporting Plaintiff's allegations.  (AR 17.)  Rather, Plaintiff's treating physician Dr. Jones opined in June 2006 that none of Plaintiff's medications prevented him from returning to the work force.  (AR 219.)  *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("None of the doctors who examined [the claimant] expressed the opinion that he was totally disabled.").  The ALJ

further noted that records from Dr. Jones showed only conservative treatment and that the medications significantly reduced Plaintiff's pain. (AR 17, 219.) *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *Burch*, 400 F.3d at 681 (holding that ALJ is permitted to consider lack of treatment other than medication in his credibility determination).

Second, in discounting Plaintiff's credibility, the ALJ found inconsistencies in the record. Inconsistent statements are matters appropriately considered in evaluating a claimant's subjective complaints.  In rejecting testimony regarding subjective symptoms, permissible grounds include a reputation for dishonesty, conflicts or inconsistencies between the claimant's testimony and his conduct or work record, internal contradictions in the testimony, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Moisa*, 367 F.3d at 885; *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  The ALJ may consider whether the Plaintiff's testimony is believable or not. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

In this case, the ALJ found Plaintiff's statement that he quit work because of medical problems inconsistent with the medical record indicating that his company had been closed (AR 17). *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (holding that ALJ's specific, cogent reasons for disregarding claimant's testimony included, *inter alia*, claimant's statement to his doctor that he left his job because he was laid off, rather than because he was injured).  Further, although Plaintiff reported in October 2005 that he sat most of the day and felt depressed, Plaintiff reported in May 2006 that he could walk one half mile to shop for groceries and perform limited housework. (AR 18, 223, 235.)  The ALJ appropriately considered these inconsistent statements in evaluating Plaintiff's subjective complaints.  (AR 18.)

In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of his symptoms. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory

10

testimony unsupported by objective medical evidence constituted substantial evidence in support of ALJ's negative credibility determination).  Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

**B.     The ALJ's Application of Administrative Res Judicata**

Plaintiff further asserts in his reply brief that the ALJ erroneously applied *Chavez v. Bowen* in finding that the presumption of continuing non-disability applied to the period following his prior application.  Because Plaintiff raises this issue for the first time in his reply, he has waived the issue. *See Singh v. Ashcroft*, 361 F.3d 1152, 1157 n.3 (9th Cir. 2004) (issues not raised in opening brief are typically deemed waived).

In any event, the principles of res judicata apply to administrative proceedings. *Lyle v. Sec'y of Health & Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983).  A previous finding that a claimant is not disabled creates a presumption of continuing non-disability.  *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985).  An ALJ's finding of non-disability creates "a presumption that [the claimant] continued to be able to work after that date." *Id.*  To overcome this presumption, the claimant must prove "changed circumstances" indicating a greater disability. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); Acquiescence Ruling ("Ruling") 97-4(9).[4]  For example, a change in age status after the first determination is a changed circumstance sufficient to rebut the presumption of continuing non-disability. *Chavez*, 844 F.2d at 693.  Changed circumstances also include an increase in the severity of the claimant's impairment, the alleged existence of a new impairment, or a change in the criteria for determining disability. Ruling 97-4(9); *see also Vasquez*, 572 F.3d at 597-98.

---

[4] Ruling 97-4(9) was adopted in response to *Chavez* and explains how the holding in *Chavez* is to be applied, noting that it is applicable only to Ninth Circuit cases. *See* Ruling 97-4(9), 1997 WL 740404.  Acquiescence Rulings "are binding on all components of the Social Security Administration" and accorded deference by a reviewing court. 20 C.F.R. § 402.35(b)(2); *see McNabb v. Barnhart*, 340 F.3d 943, 944-45 (9th Cir. 2003).

However, even where the claimant is able to overcome the presumption of disability, certain prior findings are entitled to some res judicata consideration.   Prior determinations of RFC, education, and work experience are entitled to res judicata absent new and material evidence on the issue. *Chavez*, 844 F.2d at 694. "Adjudicators must adopt such a finding from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." Ruling 97-4(9).

Here, the ALJ noted that Plaintiff had filed two prior applications that were denied in 2002 and 2005. (AR 17.)  The ALJ further noted that, "[i]n order to rebut the presumption [of continuing non-disability], the claimant must prove 'changed circumstances,' indicating a greater disability." (AR 12.)   The ALJ found that Plaintiff had "not rebutted the presumption of continuing nondisability.   He has not established the existence of new impairments, but has changed age category, reaching age 50 [in 2005]."  (AR 13.)

Plaintiff correctly points out, however, that changed circumstances existed to prevent the ALJ from applying the presumption of continuing non-disability because Plaintiff's age category had changed. *See Vasquez*, 572 F.3d at 597.  As discussed above, the ALJ must first examine whether changed circumstances exist to prevent a finding of continuing non-disability.   If changed circumstances exist, as they do here, the prior RFC is still entitled to res judicata.   The ALJ must then determine whether new and material evidence exists to warrant a change in the prior RFC.

In this case, the ALJ erred in finding an absence of changed circumstances to disprove the presumption of continuing non-disability from the prior unfavorable hearing decision.   The ALJ nonetheless assessed Plaintiff's RFC independently of the findings in the previous administrative decision on May 27, 2005.  (AR 13.)  Further, the ALJ thoroughly reviewed the medical record in finding no medical evidence that Plaintiff's impairments had significantly worsened or that he became more limited after the date of the previous decision. (AR 19.)  In other words, the ALJ did

not strictly apply the presumption of continuing non-disability because he continued further with his

review and completed the five-step sequential process. (AR 13-21.) Even if the ALJ had correctly

found that Plaintiff's changed circumstances rebutted the presumption of continuing non-disability,

the ALJ would have had to proceed with a review of the medical evidence, as he did despite his

error. Thus, the ALJ's finding that the presumption of continuing non-disability applied in this case

is harmless error because it did not negate the validity of the ALJ's ultimate conclusion. *See Batson*,

359 F.3d at 1197 (finding an error harmless where it did not negate validity of ALJ's ultimate

conclusion). In sum, the ALJ's findings are supported by substantial evidence and are legally

correct.

## CONCLUSION

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the

record, the Court finds that the ALJ's decision is supported by substantial evidence in the record as

a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal

from the administrative decision of the Commissioner of Social Security. The Clerk of this Court

is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social

Security, and against Plaintiff Anthony Ray Jones.

IT IS SO ORDERED.

**Dated:    December 8, 2010                              /s/ Sheila K. Oberto**
                                                  UNITED STATES MAGISTRATE JUDGE

13